# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 28, 2011

Lyle W. Cayce
Clerk

No. 10-50728

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

$73,919.00 IN UNITED STATES CURRENCY MORE OR LESS; $1,800.00
IN MEXICAN PESOS MORE OR LESS,

Defendants

ROBERT JAMES OCAMPO,

Claimant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:04-CV-100

Before JONES, Chief Judge, STEWART and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-50728

The claimant seeks to set aside a default judgment in a forfeiture action. He sought relief five years after the entry of the judgment. The district court denied his request, concluding that no grounds existed for vacating the original judgment. We AFFIRM.

After being arrested on November 18, 2003, Robert James Ocampo consented to a search of his apartment and belongings. Agents discovered $73,919 in United States currency and $1800 in Mexican pesos. The money was believed to be connected to Ocampo's criminal activities. The Government seized the money and commenced civil judicial forfeiture proceedings. On April 9, 2004, the United States Attorney served the verified complaint, notice, warrant, and order on Ocampo at the Englewood, Colorado federal correctional institution. On May 6, Ocampo filed his verified statement of interest or right for the money. The instructions in the documents served upon Ocampo on April 9 informed Ocampo he also would need to file an answer to the verified complaint for forfeiture within 20 days after filing his verified statement. Ocampo never filed an answer.

On May 12, Ocampo mailed a letter to the United States Attorney verifying his address as being at Englewood. It was received on May 17. On May 21, however, Ocampo was transferred from the Englewood facility in Colorado to another facility in El Paso, Texas.[1]

On June 10, the United States Attorney filed an application for entry of default and default judgment. Also filed was a motion for default judgment against Ocampo and all other potential claimants who had been served by publication. That same day, the United States Attorney mailed copies by

---

[1] The Bureau of Prisons' knowledge of Ocampo's transfer is not imputed to the United States Attorney. We have held that "notice or actual knowledge of one United States government agency will not be imputed to another agency." *U.S. Small Bus. Admin. v. Bridges*, 894 F.2d 108, 112 (5th Cir. 1990).

No. 10-50728

certified mail of both filings to Ocampo at the Englewood facility in Colorado. The return receipt shows those documents were received at the Englewood facility on June 14, by a named employee of the Bureau of Prisons.

At that time, Federal Rule of Civil Procedure 55 provided: "If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days [since revised to 7 days] before the hearing"; that time period started when the United States Attorney mailed the filings to Ocampo on June 10.[2]  Fed. R. Civ. P. 55(b)(2).

Also on June 14, the district court clerk made an entry of default against Ocampo and all other claimants served by publication.  *See* Fed. R. Civ. P. 55(a). On June 16, the United States District Court for the Western District of Texas, pursuant to Rule 55(b)(2), entered an order of default and judgment of forfeiture against Ocampo and all claimants served by publication.

The United States Attorney, district clerk, and district court followed the procedures of Rule 55.  Ocampo does not challenge when the notice was sent. He only challenges where the notice was sent.

In November 2009, Ocampo filed a Federal Rule of Criminal Procedure 41(g) motion for return of the property under his criminal docket number.  That motion was dismissed without prejudice.  Ocampo was directed to file instead a Federal Rule of Civil Procedure 60(b) motion for relief from the default judgment under the civil docket number for the forfeiture proceedings.  He did so in 2010. The district court denied that motion.  Ocampo appealed here.

---

[2] Rule 5 says mailing service is permissible and given that Rule 55 only required service three days before the entry of judgment, even if Ocampo still had been at the Englewood facility he would not have received notice within three days of the United States Attorney mailing it.  Rule 55(c) anticipates there may be good cause to set aside a default and a prompt response after receiving notice might constitute such a reason.  *See Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003).

No. 10-50728

A decision on a Rule 60(b) motion is generally reviewed for an abuse of discretion. *Hernandez v. Thaler*, 630 F.3d 420, 428 (5th Cir. 2011). Rule 60(b)(4) applies "where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1377 (2010).

Ocampo raised a number of issues that we discuss only briefly. Ocampo failed to file an answer to the Government's forfeiture complaint and therefore waived a number of issues. *See Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010). He waived his arguments that a full hearing was needed on the merits of his Rule 60(b) motion, that the Government had not stated facts in the complaint with sufficient particularity, and that the civil forfeiture should be set aside on the basis that the search of his apartment and seizure of the money violated the Fourth Amendment. The failure to file an answer prevented the district court from considering these arguments before the forfeiture was granted. *Id.* Specifically, Ocampo's failure to file a timely answer foreclosed any challenge to the search through a Rule 60 motion. *See United States v. U.S. Currency Totalling $3,817.49*, 826 F.2d 785, 787 (8th Cir. 1987).

Ocampo also challenged the use of a civil forfeiture proceeding concurrent with his criminal prosecution. The separate proceedings are proper. "Since the earliest years of this Nation, Congress has authorized the Government to seek parallel *in rem* civil forfeiture actions and criminal prosecutions based upon the same underlying events." *United States v. Ursery*, 518 U.S. 267, 274 (1996).

In addition, Ocampo argues that he was denied due process because he received inadequate notice prior to the entry of default judgment. If "those with an interest in forfeited funds failed to receive constitutionally adequate notice, the administrative forfeiture is void and must be vacated." *Kadonsky v. United States*, 216 F.3d 499, 503 (5th Cir. 2000). Notice is constitutionally adequate if

No. 10-50728

it satisfies due process. Adequate notice exists when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Dusenbery v. United States*, 534 U.S. 161, 173 (2002) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Ocampo argues the Government failed to meet this standard by mailing the notice of default to the wrong correctional facility. He also argues the Government should have served notice upon his attorney in his criminal case or on the attorney he retained in this case. The Government argues that it sufficed to send notice to the institution where a month earlier Ocampo confirmed he was incarcerated. In the regular course of business the records would have been forwarded to Ocampo. Whether it reached Ocampo cannot be known due to a flood at the Colorado facility and a two-year-only record retention policy at the Texas facility. There is no evidence, though, to contradict that the Colorado facility forwarded that notice to Ocampo in Texas.

Given that the Government's attempt to put Ocampo on notice was almost identical to the process the Supreme Court approved in *Dusenbery*, we conclude it was reasonably calculated to apprise him of the pending default. The Government sent certified notice to the prison where it reasonably believed Ocampo was housed. *See Dusenbery*, 534 U.S. at 168-69. As to service upon his attorney of record listed in the district court for this case, Ocampo provided no evidence that the Government knew that he was represented. Ocampo did not note his representation in the letter he sent confirming his address and the record does not reflect that the attorney ever filed anything with the district court.

Ocampo received constitutionally adequate notice. AFFIRMED.